## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

FISHER SAND & GRAVEL CO., and/or
STATE OF NEW MEXICO EX REL.
FISHER SAND & GRAVEL CO.,

        Plaintiffs,

v.                                     CV 09-727 WPL/RLP

WESTERN SURETY COMPANY,

        Defendant.

### ORDER

This matter is before me on a motion to dismiss and related briefing. For the reasons that follow, I will grant the motion in part.

### Factual and Procedural Background

Parker Excavating, Inc., entered into an agreement to perform excavation services related to the construction of the Miners' Colfax Medical Center in Raton, New Mexico. (Am. Compl. ¶ 7 & Ex. A.) Fisher Sand & Gravel Company supplied labor, materials, and equipment for the project but was not paid $299,091, which it was due under an agreement with Parker Excavating. (Am. Compl. ¶¶ 10-11.)

Parker Excavating had taken out a payment bond with Western Surety Company to pay for labor, materials, and equipment furnished for the project. (*Id.* ¶ 8.) Parker Excavating and Western Surety also entered into an indemnity agreement, which requires Parker Excavating to indemnify Western Surety for any payments made pursuant to the bond. (Resp. to Mot. Dismiss Ex. 1.)

Western Surety's obligations under the payment bond are triggered when a claimant gives notice that a claim is being made under the bond. (Am. Compl. Ex. A ¶ 4.1.) The payment bond

further provides that "[n]o suit or action shall be commenced . . . under this Bond . . . after the expiration of one year from the date . . . on which the Claimant gave the notice . . . ." (*Id.* ¶ 11.)

On October 31, 2007, Fisher notified the Miners' Colfax Medical Center of its claim, and on November 1, 2007, it notified Western Surety of the claim. (Am. Compl. ¶ 12.) Western Surety acknowledged Fisher's claim and pledged to investigate it. (*Id.* ¶ 13.) Fisher alleges, however, that Western Surety failed to comply with its obligations under the bond. (*Id.* ¶¶ 14-18.)

On July 1, 2008, Parker Excavating filed a petition under Chapter 11 of the Bankruptcy Code in the District of Colorado. (*Id.* ¶ 19.) The bankruptcy court granted Fisher's motion for relief from the automatic stay on March 30, 2009. (*Id.*)

On June 18, 2009, Fisher brought suit against Western Surety in a New Mexico state court. (Notice of Removal Ex. 1.) Count one of the complaint is for debt and money due under New Mexico common law; count two is for unfair claims practices under the Trade Practices and Frauds Act (TPFA) of New Mexico's Insurance Code; and count three is for debt and money due under New Mexico's "Little Miller Act."[1]

After removing the suit to this Court, Western Surety filed a motion to dismiss. Western Surety asserts that Fisher's suit is time-barred because it was not commenced within one year after Fisher gave notice of its claim, as required by the payment bond. Fisher contends that the suit is timely because the limitation period was tolled from the date Parker Excavating filed its bankruptcy petition until the bankruptcy court granted Fisher's motion for relief from the automatic stay. Alternatively, Fisher argues that the limitation period should be equitably tolled as a result of

---

[1] The amended complaint concedes that the Little Miller Act does "not appear to apply" to this case, but states that count three is included in the event this Court determines that the Act does apply. (Am. Compl. ¶ 31.)

Western Surety's conduct.  Fisher further asserts that the limitation period in the payment bond does not apply to its claim under the TPFA.

## Standards Applicable to Western Surety's Motion

A defendant may base a motion to dismiss on the assertion that the suit is time-barred.  *See Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).  When ruling on a motion to dismiss, I must accept all the factual allegations in the complaint as true.  *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  Exhibits attached to a complaint are treated as part of the pleadings for purposes of ruling on a motion to dismiss.  *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

## The Automatic Stay Did Not Apply to Fisher's Suit Against Western Surety

The limitation period set forth in the payment bond expired on November 1, 2008—one year after Fisher gave notice of its claim to Western Surety.  Fisher did not file this suit until June 18, 2009.  However, the suit would be timely if Fisher can deduct the period between Parker Excavating's filing of its bankruptcy petition (July 1, 2008) and the bankruptcy court's granting of relief from the automatic stay (March 30, 2009).

Under 11 U.S.C. § 362(a)(1), the filing of a bankruptcy petition generally "operates as a stay . . . of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case . . . ."  A New Mexico statute provides, "When the commencement of any action, shall be stayed or prevented by injunction order or other lawful proceeding, the time such injunction order or proceeding shall continue in force shall not be counted in computing the period of limitation."  N.M. STAT. ANN. § 37-1-12.  Fisher argues that § 362(a)(1) stayed commencement

3

of its suit against Western Surety.  Therefore, according to Fisher, the stay tolled the limitation period pursuant to N.M. STAT. ANN. § 37-1-12.[2]

By its literal terms, § 362(a)(1) only stays actions against "the debtor."  Accordingly, "[i]t is universally acknowledged that an automatic stay of proceeding accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the Chapter 11 debtor."  *Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1196 (6th Cir. 1983) (concerning claims against a debtor's solvent co-defendants).

In accordance with *Lynch*, a Tenth Circuit case indicates that the automatic stay does not apply to sureties.  *See Globe Constr. Co. v. Okla. City Hous. Auth.*, 571 F.2d 1140 (10th Cir. 1978).  In that case, Globe Construction Company was the general contractor on a project.  General Insurance Company, as surety, executed a performance bond on behalf of Globe.  Globe petitioned for bankruptcy under Chapter 11, and a bankruptcy referee entered an order staying all proceedings against both Globe and General Insurance.  Nevertheless, certain subcontractors proceeded with a

---

[2] Actually, Fisher's principal argument is that the stay tolled the limitation period pursuant to 11 U.S.C. § 108(c).  Fisher only refers to N.M. STAT. ANN. § 37-1-12 in a footnote as "confirm[ing]" § 108(c).  (Resp. to Mot. Dismiss at 6 n.2.)  Section 108(c) states that "if . . . an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of . . . the end of such period, including any suspension of such period occurring on or after the commencement of the case; or . . . 30 days after notice of the termination or expiration of the stay . . . ."  Fisher cites *Valley Transit Mix of Ruidoso, Inc. v. Miller*, 928 F.2d 354 (10th Cir. 1991) as holding that a "stay of actions under section 362 operates to toll any applicable statute of limitations."  (Resp. to Mot. Dismiss at 6.)  In *Miller*, however, neither party "dispute[d] that when a claim to foreclose a mechanics lien falls within the scope of the automatic stay, the enforcement period governing the claim is tolled by section 108(c)."  928 F.2d at 355.  Other circuits have held that § 108(c) is not itself a tolling provision; it merely extends the limitation period so that a suit that would otherwise be time-barred may be commenced within thirty days after notice of termination of the stay.  *See, e.g., Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072-74 (2d Cir. 1993).  Fisher did not file this suit within thirty days after the bankruptcy court lifted the stay.  Nevertheless, because Western Surety does not dispute that the limitation period was tolled if the stay applied to Fisher's claims, I will assume that N.M. STAT. ANN. § 37-1-12 would toll the limitation period at issue here.

4

judicial action against General Insurance on the performance bond, and the district court entered a judgment in their favor.  The Tenth Circuit rejected the argument that the district court "should not have continued to proceed as to the surety, General Insurance." *Id.* at 1143.

Relying on the general rule that the automatic stay does not apply to claims against a debtor's surety, Western Surety contends that the stay did not toll the limitation period for Fisher's claims against it. *See, e.g., Fountain Sand & Gravel Co. v. Chilton Constr. Co.*, 578 P.2d 664, 665 (Colo. Ct. App. 1978) ("[I]n an action on a surety bond, . . . the principal's bankruptcy does not toll the statute of limitations on an action against the surety."); *Cumberland Metals, Inc. v. Ky. Ins. Guar. Assoc.*, 801 S.W.2d 339, 339 (Ky. Ct. App. 1990) (rejecting the argument that the automatic stay "acts as a stay for suit against the bankrupt construction contractor's surety, thus tolling the contractual one-year limitation in the surety bond").

Fisher relies on a different rule, which originated with *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986).  In *A.H. Robins*, the Fourth Circuit held that suits against a debtor's co-defendants may be stayed "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor."  788 F.2d at 999. According to the Fourth Circuit, "An illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case." *Id.*  The Tenth Circuit has indicated that it would follow *A.H. Robins*, but it has yet to find a situation in which the stay should be expanded under the reasoning in that case. *See Okla. Federated Gold & Numismatics, Inc. v. Blodgett*, 24 F.3d 136, 141 (10th Cir. 1994) (stating that *A.H. Robins* created a "narrow exception" to the general rule that the stay does not extend to solvent codefendants and rejecting the argument that a suit against the president of a

5

debtor company should have been stayed where the plaintiff's claims against the president were separate and independent from the claims asserted against the debtor company).

Fisher argues that because Parker Excavating agreed to indemnify Western Surety for any payment it makes under the payment bond, the stay extended to Western Surety, thereby tolling the limitation period for Fisher's claims against Western Surety on the bond.  In addition to *A.H. Robins* and *Blodgett*, Fisher relies on cases in which the automatic stay was extended to cover claims against the debtor's indemnitee.  *See, e.g., In re N. Star Contracting Corp.*, 125 B.R. 368, 370-71 (S.D.N.Y. 1991); *Seybolt v. Bio-Energy of Lincoln, Inc.*, 38 B.R. 123, 128 (Bankr. D. Mass. 1984). In these cases as well as in *A.H. Robins*, bankruptcy courts expressly extended the automatic stay. In contrast, neither Parker Excavating nor Western Surety ever requested the bankruptcy court to extend the stay to Fisher's claims against Western Surety.

The weight of authority indicates that although the stay provided by 11 U.S.C. § 362(a) is automatic as to the debtor, it is not automatic as to others.  Unless the bankruptcy court expressly extends the stay to others, it applies by its literal terms only to the debtor.  *See C.H. Robinson Co. v. Paris & Sons, Inc.*, 180 F. Supp. 2d 1002 (N.D. Iowa 2001).  In *C.H. Robinson*, the plaintiff sued Midwest and Paris & Sons after Paris & Sons' bankruptcy petition was dismissed.  Midwest moved to dismiss based on the statute of limitation.  The plaintiff argued that the statute was tolled by the automatic stay in Paris & Sons' bankruptcy proceeding because Midwest was an indispensable party.  The district court determined that the plaintiff's suit against Midwest was not automatically stayed during Paris & Sons' bankruptcy.  The court concluded that the "party seeking to invoke an extension of the stay must affirmatively seek an order from the bankruptcy court . . . ."  *Id.* at 1018. The court sided with other courts that had reached the same conclusion.  *See id.* at 1011-12, 1015 (citing cases from the Central District of California, the Southern District of New York, and the

6

Northern District of Illinois); *see also Hamilton v. Am. Corrective Counseling Servs.*, No. 3:05-CV-434-RM, 2009 WL 973447, at *3 (N.D. Ind. Apr. 8, 2009); *In re Richard B. Vance & Co.*, 289 B.R. 692, 697 (Bankr. C.D. Ill. 2003); *Alvarez v. Bateson*, 932 A.2d 815, 823-24 (Md. Ct. Spec. App. 2007).

The purpose underlying § 362(a)(1) bolsters this conclusion. The stay was principally designed to protect the debtor and its estate on behalf of creditors. *C.H. Robinson*, 180 F. Supp. 2d at 1016. Paris & Sons' failure to request an extension of the stay indicated that it was "comfortable with the possibility of Midwest's claim for indemnification." *Id.* Here, Fisher asserts that "Western Surety has taken the position in the BR Court filings that Parker must broadly indemnify Western Surety for any claims against the Payment Bond." (Resp. to Mot. Dismiss at 7.) As in *C.H. Robinson*, Parker Excavating did not seek to extend the stay, indicating its comfort with Western Surety's indemnity claim. Fisher also cites a passage from *A.H. Robins* in which the court suggested that it would be unfair "if the indemnitee, who has suffered a judgment for which he is entitled to be absolutely indemnified by the debtor, cannot file and have allowed as an adjudicated claim the actual amount of the judgment he has secured but must submit his claim for allowance in the bankruptcy proceeding with the prospect that his claim may not be allowed in the full amount . . . ." *A.H. Robins*, 788 F.2d at 1000. Yet Western Surety, the indemnitee in this case, was apparently comfortable with this prospect because it did not seek an extension of the automatic stay. Moreover, the bankruptcy court is in a better position than this Court to determine whether extending the stay would advance the purposes of § 362. *See 555 M Mfg., Inc. v. Calvin Klein, Inc.*, 13 F. Supp. 2d 719, 722 (N.D. Ill. 1998).

One other consideration also supports the conclusion reached in *C.H. Robinson*. If the automatic stay could be deemed to apply to entities affiliated with the debtor without the necessity

of an order extending the stay, it would be difficult for creditors of the affiliated entities to know whether attempts to collect from those entities would violate the automatic stay.

Although some courts have concluded that a court order is not required to extend the automatic stay if the conditions in *A.H. Robins* are met, those conclusions are dicta or poorly reasoned. *See, e.g., Fleet Bus. Credit, L.L.C., v. Wings Rests., Inc.*, 291 B.R. 550, 555 (N.D. Okla. 2003) (stating in dicta that a non-debtor need not seek injunctive relief in the bankruptcy court to avail itself of the automatic stay because the stay is self-executing); *Gen. Dynamics Corp. v. Veliotis (In re Veliotis)*, 79 B.R. 846, 848 (Bankr. E.D. Mo. 1987) (stating in dicta that "courts have determined that certain actions against a non-debtor third party are stayed . . . automatically by the operation of Section 362," but citing only *A.H. Robins*).

The Tenth Circuit has not expressly adopted the approach articulated in *C.H. Robinson*, but its ruling in one case suggests that it agrees with the weight of authority. *See Otoe County Nat'l Bank v. W & P Trucking, Inc.*, 754 F.2d 881 (10th Cir. 1985). In that case, W & P Trucking executed leases on trucks and equipment to Otoe County National Bank. Jack Cramer guaranteed payment to Otoe. When W & P failed to make the monthly rental payments, Otoe sued it and Cramer. Shortly after the suit was filed, W & P sought bankruptcy protection. The district court later granted a default judgment against Cramer. In seeking to set aside the default judgment, Cramer argued in part that "the automatic stay should be interpreted to extend to guarantors of a bankruptcy debtor." *Id.* at 882. The Tenth Circuit held that Cramer's reliance on *In re Johns-Manville Corp.*, 26 B.R. 420 (Bankr. S.D.N.Y. 1983), was misplaced because there the debtor

8

"sought to extend the stay under 11 U.S.C. § 105 to preclude all suits against [its] employees, agents and related entities.  Neither W & P nor Cramer sought relief under § 105 in this case."  *Id.* at 883.[3]

Fisher maintains that "[i]t is noteworthy that the BR Court *lifted* the stay; rather than determining the stay did not apply in the first instance.  Presumably, the BR Court would have not needed to lift a non-existent stay."  (Resp. to Mot. Dismiss at 8 n.3 (emphasis in original).)  However, the bankruptcy court's granting of Fisher's motion to lift the automatic stay does not amount to a ruling by the bankruptcy court that the stay extended to Fisher's claims against Western Surety.  The bankruptcy judge's comments at the hearing on Fisher's motion to lift the automatic stay make clear that he did not believe that the automatic stay applied to Fisher's claims against Western Surety.

The bankruptcy judge first stated that under "the literal interpretation of the language at 362, what Fisher is seeking is not an action against the Debtor or its assets.  So 362 doesn't apply in connection with the request they are seeking."  (Reply to Mot. Dismiss Ex. A. at 41.)  The judge then noted that he was aware of cases in which § 362 had been extended to third parties, but he stated that the stay should only be extended "through a separate proceeding, through 105 or, . . . a specific request to extend 362 . . . , [which] hasn't been done here."  (*Id.* at 42.)  The judge concluded:

> Since the relief sought is limited to permission to sue the bonding company, frankly I'm not sure it was even necessary.  I understand the concern, but it's – I do not believe the bonding company is, you know, is covered by 362, an action against it, an independent right against the bonding company, as such.  The motion to the relief from the stay [sic], to the extent it is even needed, will be granted for that limited extent.

---

[3] Section 105 grants a bankruptcy court the authority to enjoin suits in other courts.  *See* 11 U.S.C. § 105(a); *A.H. Robins*, 788 F.2d at 1002-03.

(*Id.* at 43.)[4]

Because the bankruptcy court did not expressly extend the automatic stay to cover Fisher's claims against Western Surety, the general rule excluding sureties from coverage controls. Consequently, the stay did not toll the running of the limitation period set forth in the payment bond.

### Equitable Tolling Does Not Apply to Fisher's Suit Against Western Surety

Fisher asserts that if the automatic stay did not toll the running of the limitation period, the New Mexico doctrine of equitable tolling should apply.[5]  The New Mexico Supreme Court has held that "the conduct of a party may estop it from raising the statute of limitations as a defense." *Molinar v. City of Carlsbad*, 735 P.2d 1134, 1137 (N.M. 1987).  "Under New Mexico law, 'the party claiming that the statute of limitations should be tolled has the burden of setting forth sufficient facts to support its position.'" *Roberts v. Barreras*, 484 F.3d 1236, 1240 (10th Cir. 2007) (quoting *City of Carlsbad v. Grace*, 966 P.2d 1178, 1181 (N.M. Ct. App. 1998)).

---

[4] Fisher attached various bankruptcy court records to its response to the motion to dismiss and asserted that I may take judicial notice of records of proceedings in other courts without converting a motion to dismiss into a motion for summary judgment.  Fisher included a copy of its motion for relief from the automatic stay and the bankruptcy judge's written order granting the motion.  The order states that the judge issued an oral ruling at the hearing on the motion and then states that the motion is granted, "[c]onsistent with the Court's oral ruling."  (Resp. to Mot. Dismiss Ex. 5.)  Fisher did not, however, include a transcription from the hearing.  Western Surety attached a partial, unofficial transcription to its reply.  Fisher has not challenged the accuracy of the transcription or argued that it should not be considered in ruling on the motion to dismiss.

[5] New Mexico courts have sometimes used the terms "equitable tolling," "equitable estoppel," and "fraudulent concealment" interchangeably, making it difficult to discern whether the terms represent different doctrines or merely different facets of the same doctrine.  *See, e.g, Roberts v. Barreras*, 484 F.3d 1236, 1242 (10th Cir. 2007) (noting that equitable tolling is sometimes referred to as fraudulent concealment); *Kern ex rel. Kern v. St. Joseph Hosp., Inc.*, 697 P.2d 135, 138 (N.M. 1985) (stating that fraudulent concealment is based on equitable estoppel); *Hagen v. Faherty*, 66 P.3d 974, 977 (N.M. Ct. App. 2003) (indicating that equitable tolling encompasses fraudulent concealment, but is distinguishable from equitable estoppel).  Fisher uses the term "equitable tolling" and relies on Western Surety's conduct as the factual basis for tolling.  In considering Fisher's argument, I have relied on cases that address the defendant's conduct, regardless of the label used to describe the tolling theory.

Fisher argues that Western Surety's conduct caused it to refrain from filing suit before the limitation period expired.  Fisher relies on the allegations of unfair claims practices in count two of the amended complaint.  According to that count, Western Surety failed to: 1) act reasonably promptly regarding Fisher's claim under the payment bond; 2) affirm or deny coverage of the claim within a reasonable time after proof of the amount due was submitted; 3) act in good faith to effectuate a prompt and fair settlement of the claim after Western Surety's liability became reasonably clear; and 4) settle the claim promptly after liability was apparent.  (Am. Comp. ¶¶ 23-26.)  In particular, Fisher alleges that on July 23, 2008, Western Surety e-mailed Fisher's general counsel that "Parker Excavating believes that the amount owed is $279,373.20 without the interest included."  Western Surety requested further documentation regarding the disputed amounts and stated, "If you can provide this material; I am truly hopeful that we can settle this claim within the next 5 to 7 business days."  (*Id.* ¶ 15.)  Although Fisher provided Western Surety with the requested documentation, Western Surety did not reply.  (*Id.* ¶¶ 16-17.)

"It is clear that offers or promises of settlement, in connection with other conduct of defendants upon which plaintiffs have reasonably relied, may have the effect of tolling the statute of limitations."  *Molinar*, 735 P.2d at 1137. "Mere negotiations, without more, are insufficient as a matter of law to estop assertion of the statute of limitations as a bar."  *Knippel v. N. Commc'ns, Inc.*, 640 P.2d 507, 511 (N.M. Ct. App. 1982).  An offer of settlement will toll the limitation period if it is coupled with conduct by the defendant that reasonably led plaintiff to believe compensation would be paid.  *Id.*

The conduct alleged by Fisher in items one through four above is insufficient as a matter of law to toll the limitation period.  In effect, Fisher alleges that Western Surety was giving it the runaround.  Nothing about the alleged conduct would make a person reasonably believe that

11

Western Surety was about to pay Fisher's claim.  The statement by Western Surety's representative that he hoped the claim could be settled within five-to-seven business days if Fisher provided additional documentation comes closer to a promise of settlement.  However, this statement was made on July 23, 2008.  The amended complaint indicates that Western Surety did not reply after Fisher provided the additional documentation.  At this point, three months of the limitation period remained.  Fisher does not allege any conduct on the part of Western Surety that prevented or discouraged it from filing suit during this remaining time.

"[E]quitable tolling . . . only applies when the defendant is prevented from filing throughout the entire length of the statutory period."  *Roberts*, 484 F.3d at 1442 (citing *Tomlinson v. George*,  116 P.3d 105, 111 (N.M. 2005)); *see also Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 858 P.2d 66, 74-75 (N.M. 1993) (holding that trial court abused its discretion by applying equitable estoppel to toll limitation period where the grounds upon which plaintiffs based their claims were apparent to them many years before they filed suit and they could have commenced the suit within the limitation).  Fisher could not have reasonably delayed filing suit until after the limitation period expired based on a hoped-for settlement that was to occur approximately three months before expiration of the period.  *See Garcia ex rel. Garcia v. La Farge*, 893 P.2d 428, 432 (N.M. 1995) ("Because equity tolls the statute, it does so only as long as the [plaintiff] is not guilty of failing to exercise ordinary diligence in pursuit of a cause of action.").

**The Payment Bond's Limitation Period Does Not Apply to Fisher's Claim Under the TPFA**

Fisher contends that the limitation period set forth in the payment bond does not apply to its cause of action for unfair claims practices.  I agree.  The limitation period in the payment bond refers to suits "under this Bond."  Fisher's cause of action for unfair claims practices is brought under the TPFA, not under the payment bond.  The purpose of the TPFA is to promote ethical

settlement practices within the insurance industry. *Martinez v. Cornejo*, 208 P.3d 443, 455 (N.M. Ct. App. 2008), *cert. denied*, 203 P.3d 870 (N.M. 2009). "By granting a private right of action to third parties for the purpose of promoting ethical claims practices within the insurance industry, [the New Mexico] Legislature created a new right of action that did not exist at common law. The nature of this new right of action is neither contractual nor tortious. Instead, . . . this is a statutory cause of action arising from the Insurance Code." *Id.* (internal citations omitted).

As contemplated by *Martinez*, count two of the amended complaint alleges that Western Surety failed in its duties to: 1) act reasonably promptly regarding Fisher's claim under the payment bond; 2) affirm or deny coverage of the claim within a reasonable time after proof of the amount due was submitted; 3) act in good faith to effectuate a prompt and fair settlement of the claim after Western Surety's liability became reasonably clear; and 4) settle the claim promptly after liability was apparent. (Am. Comp. ¶¶ 23-26.) These duties arise from the TPFA, not from the payment bond. *See* N.M. STAT. ANN. § 59A-16-20(B), (D), (E), (M). Accordingly, by its plain terms, the limitation period in the payment bond is inapplicable to Fisher's TPFA claim.

### The Applicability of the Limitation Period to Fisher's Claim Under the Little Miller Act is Inadequately Briefed

In its motion to dismiss, Western Surety states that the payment bond's "contractual limitation period governs all of Fisher's claims." (Mot. Dismiss at 3.) Appended to this statement is a footnote that avers, "Fisher asserts that the Little Miller Act . . . is inapplicable in this matter and for purposes of this Motion only, Western States [sic] does not dispute Fisher's contention." (*Id.* at 3 n.1.) In its response to the motion to dismiss, Fisher cites the footnote and concludes that Western Surety "made no argument whatsoever in response to the allegations of this alternative claim under New Mexico's Little Miller Act. Therefore, Fisher's alternative claim under the Little

13

Miller Act must stand." (Resp. to Mot. Dismiss at 11.) In its reply, Western Surety argues that "the Bond's time-to-sue provision also encompasses any of Fisher's claims based upon the Little Miller Act . . . that also arise in connection with the Bond." (Reply to Mot. Dismiss at 2.)

Other than these sketchy comments, the parties make no specific arguments about the applicability of the payment bond's limitation period to the Little Miller Act claim. They have not addressed how the limitation period set forth in the payment bond differs from the one set forth in the Act, nor have they addressed the standards that should govern whether the Act's statutory limitation period can be modified by a payment bond. It was not even clear that Western Surety was asserting that the payment bond's limitation period applies to the Little Miller Act claim until it filed its reply brief. Moreover, Fisher does not believe that its Little Miller Act claim is viable. The amended complaint alleges that "[a]mong the reasons the Little Miller Act does not apply is the fact that the payment bond issued by Western was not issued pursuant to § 13-4-18 NMSA." (Am. Compl. ¶ 31.) The right to sue under the Little Miller Act depends on the bond having been furnished pursuant to § 13-4-18. *See* N.M. STAT. ANN. § 13-4-19(A). Under these circumstances, I decline to make a ruling regarding which limitation period applies to the Little Miller Act claim at this juncture. The parties are of course free to revisit the issue in subsequent motion practice.

## Conclusion

The automatic stay in Parker Excavating's bankruptcy proceeding did not stay Fisher's claim under the payment bond and the allegations in Fisher's complaint do not state a claim for equitable tolling of the limitation period in the payment bond. Therefore, count one of Fisher's amended complaint for debt and money due is time barred. The payment bond's limitation period does not apply to count two of Fisher's complaint, which arises under the TPFA. The parties have not

adequately briefed whether the bond's limitation period applies to count three of Fisher's complaint, which is an alternative basis for liability under the Little Miller Act.

Accordingly, Western Surety's motion to dismiss is granted in part.   Count one of the amended complaint is dismissed with prejudice.

IT IS SO ORDERED.

WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.                    15